FILED
2014 Jul-17 PM 04:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MONDEZ HAIRE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION NO. |
| v. ) | |
| ) | 2:13-CV-00701-AKK |
| **SPRINT COMMUMNICATIONS** ) | |
| **CO., L.P., a corporation, and** ) | **OPPOSED** |
| **DIVERSIFIED CONSULTANTS,** ) | |
| **INC., a corporation,** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS' MOTION TO STAY OR ALTERNATIVELY MOTION TO EXTEND DISPOSITIVE MOTION DEADLINE

COME NOW Defendants Diversified Consultants, Inc. ("Diversified") and Sprint Communications Co., L.P. ("Sprint") (collectively "Defendants") and respectfully request that the Court stay this case pursuant to the primary jurisdiction doctrine or the Court's inherent authority, as issues before this Court—issues that could dispose of Plaintiff's claims—are presently before the Federal Communications Commission ("FCC"). In the alternative, Defendants respectfully request that the dispositive motion deadline be extended for four weeks—from July 25, 2014 to August 25, 2014.

**I.    INTRODUCTION**

Plaintiff brought this action alleging, *inter alia*, that Defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, et seq., by telephoning his cellular phone via an "automatic telephone dialing system"("ATDS") to collect a debt.[1] (Compl. ¶¶ 10, 12, 13.)

---

[1] Plaintiff's other two claims are for alleged violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., and invasion of privacy. *See* Complaint, Counts I and III. Both such claims appear to be founded, in part, on the allegation that Diversified telephoned his cellular telephone using an ATDS and without his prior, express consent. *See* Complaint, ¶¶ 31, 48. Thus, resolution of all three of Plaintiff's claims

{W0392302.1 }                                                                                              OM 278174.1

Plaintiff contends Sprint is liable under the TCPA for Diversified's calls, as Diversified was acting as a debt collector for Sprint, and Diversified told Plaintiff it was attempting to collect the subject account on Sprint's behalf. (Compl. ¶¶ 14.)

The allegations in Plaintiff's Complaint turn on several issues currently pending before the FCC in multiple Petitions for Declaratory Ruling, including (1) whether a "predictive dialer" is per se an ATDS; and (2) whether dialing equipment must have a current capacity to generate and dial random or sequential numbers in order to be considered an ATDS. The FCC has issued Public Notices seeking comments on the petitions, and several members of Congress have asked that the FCC issue a decision on the merits of one of the petitions, noting that "the FCC's 2003 and 2008 TCPA autodialer [ATDS] decisions have created significant confusion for companies that use predictive dialers to initiate live calls for non-telemarketing purposes. . . ."[2] The FCC has advised that a "draft order to resolve the Petition is under consideration by the Commission . . . ."[3]

Thus, this case would be properly dismissed on summary judgment if, *inter alia*, the FCC determines that the TCPA does not encompass debt-collection calls, or if it concludes that an ATDS must have the current capacity to generate and dial random or sequential numbers, and does not per se apply to predictive dialers. The present circumstances satisfy the standards for staying the case under the primary jurisdiction doctrine. Plaintiff's allegations fall squarely within the gambit of the FCC's rulemaking power under the TCPA. As these issues fall within

---

appears to turn, in part, on whether the TCPA applies to debt collection calls as opposed to telemarketing calls and/or whether Diversified's calling equipment constitutes an ATDS.

[2] Letter from Members of Congress to Mignon Clyburn, Acting Chairwoman, Federal Communications Commission (June 19, 2013), attached to the Declaration of L. Jackson Young, Jr. ("Young Decl."), which is denominated as "**Exhibit A**," as "**Exhibit A-1**" thereto.

[3] Letter from Kris Anne Monteith, Acting Chief Consumer and Governmental Affairs Bureau, Federal Communications Commission, to Honorable Congressman Hunter, U.S. House of Representative (Sept. 10, 2013), attached to Young Decl. as "**Exhibit A-2**."

the FCC's unique field of expertise, the FCC has primary jurisdiction to determine, and in fact will determine, these very issues in the near future. Based upon the Petitions before the FCC, which address the same issues before this Court, there is a substantial risk of nationwide, inconsistent rulings. Such risk would compromise the national uniformity which the FCC rulings are designed to accomplish. Alternatively, this case should be stayed pursuant to the Court's inherent authority to control its docket.

A number of courts faced with the same issue presented here have stayed TCPA lawsuits until the FCC issues its rulings on the Petitions. This Court should do likewise and invoke its power to stay the present matter. Issuing a stay would allow the parties, and the Court, to avoid further proceedings regarding issues that the FCC will be ruling on in the near future, and which could dispose of this case. Staying the case would impose no prejudice upon Plaintiff and will best serve the interests of justice.

**II.     FACTS**

Plaintiff brought this action based in part on the TCPA. (Compl. ¶ 2). Plaintiff alleges that Diversified is a debt collector and, in that capacity, sought to collect a debt from Plaintiff by "contact[ing] [him] on his cellular telephone in an effort to collect this debt." (*Id.* ¶ 10). Plaintiff avers Diversified "illegally used an autodialer, predictive dialer, and/or pre-recorded calls to Plaintiff's cell phone without permission to do so in violation of the [TCPA]." (*Id.* ¶ 12.) Diversified filed an Answer to Plaintiff's Complaint, denying among other things that Diversified uses an ATDS of the type contemplated under the TCPA. Diversified has held firm, based in part upon representations from the telephone system's manufacturer, that DCI's telephone system does not have the present capacity to generate, store and dial random or sequential numbers.

**III.    BACKGROUND**

Congress enacted the TCPA in response to consumer complaints regarding use of "automated equipment to engage in telemarketing." *See* Sen. Rep. No. 102-178, at 1 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1969; 137 Cong. Rec. 35302 (1991). The 1991 legislation targeted abusive robotic use of automated telephone solicitations made possible by automatic dialing machines that could generate and dial random or sequential telephone numbers. *See, e.g.,* TCPA, Pub. L. No. 102-243, 105 Stat. 2394, 2395; 137 Cong. Rec. 35304 (1991); 137 Cong. Rec. 30818 (1991).

Thus, § 227(b)(1)(A)(iii) of the TCPA makes it unlawful for any person to make any call (other than for emergency purposes or with the prior, express consent of the called party) to a cellular telephone service "using any automatic telephone dialing system or an artificial or prerecorded voice." The TCPA defines the term "automatic telephone dialing system" to mean "equipment which has the capacity to (A) store or produce telephone numbers to be called, using a random or sequential number generator; and (B) and to dial such numbers." 47 U.S.C. § 227(a)(1). The TCPA provides the FCC with authority to "prescribe regulations to implement the requirements of this subsection." *Id.* § 227(b)(2).

### A.   The FCC's Orders

In 1992, when issuing Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, the FCC recognized that debt collection calls are "not autodialer calls (i.e., dialed using a random or sequential number generator). . . ." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, ¶ 39 (1992). Then, in 2002, the FCC, due to new technologies, issued a Notice of Proposed Rulemaking (NPRM), seeking comment on "whether the Commission's rules need to be revised in order to more effectively carry out Congress's directives in the TCPA" and, specifically, "whether to revise or clarify our rules governing unwanted telephone solicitations and the use of automatic

telephone dialing systems, prerecorded or artificial voice messages, and telephone facsimile machines." *In Re Rules & Regulations Implementing Tel. Consumer Prot. Act of 1991*, 17 F.C.C. Rcd. 17459, 17461 (2002). Therein, the FCC sought comment on "whether a predictive dialer that dials telephone numbers using a computer database of numbers falls under the TCPA's restrictions on the use of autodialers." *Id.* at 17475. The FCC defined a predictive dialer as follows:

> A predictive dialer is an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call.

*Id.* at 17503.

In 2003, the FCC issued an order "revis[ing] the current Telephone Consumer Protection Act (TCPA) rules and adopt[ing] new rules to provide consumers with several options for avoiding unwanted telephone solicitations." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14017 (2003). In that order, the FCC addressed predictive dialers and found that a predictive dialer is "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls." *Id.* The FCC continued that "[t]he hardware, *when paired with certain software*, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Id.* (emphasis added). In that order, the FCC found (for the first time) that "a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." *Id.* at 14093.

The 2003 order created much uncertainty. For example, the FCC did not explain whether *all* predictive dialers fell within the definition of automatic telephone dialing equipment

("ATDS"), or whether the predictive dialer would fall within the definition *only* if it has the capacity to generate and dial random or sequential numbers. In 2008, the FCC issued a declaratory ruling in response to a request for clarification whether the TCPA's wireless provision applies to creditors and/or debt collectors. The FCC affirmed that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (2008). However, the FCC did not address whether *all* predictive dialers—or only predictive dialers that have the ability to randomly or sequentially generate telephone numbers—meet the definition of an ATDS.[4] Thus, the 2008 Order perpetuated the uncertainty caused by the 2003 order, which has resulted in petitions for declaratory rulings, asking the FCC to decide whether the TCPA applies to non-telemarketing calling activities, and whether equipment that lacks the current capacity for random or sequential number generation constitutes an ATDS, as set forth below.

B.     **Pending Petitions for FCC Declaratory Rulings**

The FCC's apparent inclusion of all predictive dialers into the definition of an ATDS has sparked significant litigation and numerous petitions for declaratory rulings asking the FCC to decide whether equipment that lacks the current capacity for random or sequential number generation constitutes an ATDS. (*See In re Communication Innovators' Pet. For Declaratory Ruling*, CG Dkt. No. 02-278 (June 7, 2012), attached to Young Decl. as "**Exhibit A-3**"; *In re*

---

[4] In that declaratory ruling, the FCC determined, however, that:

Although the TCPA generally prohibits autodialed calls to wireless phones, it also provides an exception for autodialed and prerecorded message calls for emergency purposes or made with the prior express consent of the called party. Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent of the called party, we clarify that such calls are permissible.

*Id.* at 564.

*You Mail, Inc.'s Pet. For Expedited Declaratory Ruling*, CG Dkt. No. 02-278 (Apr. 19, 2013), attached to Young Decl. as "**Exhibit A-4**"; *In re ACA International's Pet. For Rulemaking*, CG Dkt. No. CG-02-278 (Jan. 31, 2014), attached to Young Decl. as "**Exhibit A-5**"; *In re Professional Association for Customer Engagement's Petition for Expedited Declaratory Ruling and/or Expedited Rulemaking*, CG Dkt. No. 02-278 (Oct. 18, 2013), attached to Young Decl. as "**Exhibit A-6**"; *In re Glide Talk, Ltd.'s Petition for Expedited Declaratory Ruling*, CG Dkt. No. 02-278 (Oct. 28, 2013), attached to Young Decl. as "**Exhibit A-7**"; and *In re Milton Fried's and Richard Evans's Petition for Expedited Declaratory Ruling on Autodialer Issue*, CG Dkt. No. 02-278 (May 27, 2014)).

### 1. Communication Innovator's Petition

In its Petition, filed on June 7, 2012, Communication Innovator ("CI") seeks a declaration "that predictive dialers that (1) are not used for telemarketing purposes and (2) do not have the current ability to generate and dial random or sequential numbers, are not 'automatic telephone dialing systems' . . . under the TCPA and the Commission's TCPA rules." (Young Decl. at Ex. A-3 (CI Pet. at 1 (footnote omitted)).) As CI's Petition advances, the TCPA does not define "capacity" and, as such, the FCC must "clarify that the definition of an autodialer under the TCPA reflects equipment that has a *present* capacity, such as having the current ability to generate and dial random or sequential numbers without additional modifications to the equipment." (*Id.* at 17.) CI argues that the FCC "should not interpret capacity as encompassing any conceivable hardware or software modifications to a device that would permit it to generate, store, and dial numbers randomly or in sequence." (*Id.*) And, CI's Petition correctly notes, that interpreting "capacity' broadly to include "any conceivable hardware or software modification" would potentially bring "mobile phones, smart phones, tablets, e-readers, and personal computers" within the FCC's interpretation of the TCPA's scope, as each can "theoretically be

modified . . . to randomly or sequentially generate and dial telephone numbers." (*Id.*)  CI's Petition also asks that the FCC "distinguish between telemarketing and informal calls when it clarifies the meaning of capacity." (*Id.*)

On October 16, 2012, the FCC issued a public notice seeking comment on its petition. (Young Decl. at Ex. A-9).  In its Public Notice, the FCC reiterated that CI "asks the Commission to clarify that predictive dialers that are not used for telemarketing purposes and do not have the current ability to generate and dial random or sequential numbers are not 'automatic telephone dialing systems' as defined by the [TCPA] and the Commission's related rules." (*Id.*)

To date, the FCC has not issued a decision on CI's Petition.  However, by letter dated September 10, 2013, the FCC advised several members of Congress that it may issue a decision on CI's Petition in the near future (the Commission advised "[a] draft order to resolve the [CI] Petition is under consideration by the Commission, and Communication Innovators has met with the staff recently to discuss the matter."). (Young Decl. at Ex. A-2.)  Thus, the FCC has committed to issuing a decision on CI's Petition—a Petition that requests a ruling on the very issues that are before this Court.

### 2. YouMail's Petition

YouMail, Inc. filed a Petition for Declaratory Ruling with the FCC on April 19, 2013. Like Communication Innovators' Petition, YouMail's Petition asks that "the Commission affirmatively state that only equipment that has *current* capacity to store and produce telephone numbers to be called using a random or sequential number generator—and is currently being used for that purpose—should be considered an ATDS." (Young Decl. at Ex. A-4.)  The FCC issued a Public Notice seeking comments on YouMail's Petition, which it described as, *inter alia*, seeking clarification that software that does not have the current capacity to store, produce,

or dial random or sequential numbers is not an ATDS.  (Young Decl. at Ex. A-10).  To date, the FCC has not issued a decision.

### 3. ACA International's Petition

On January 31, 2014, ACA International ("ACA") filed a Petition for Rulemaking with the FCC, requesting "the Commission to (1) clarify that not all predictive dialers are categorically autodialers; (2) define "capacity" under the TCPA to mean present ability; (3) clarify that prior express consent attaches to the person incurring a debt, and not the specific telephone number provided by the debtor at the time a debt was incurred; and, (4) establish a safe harbor for autodialed "wrong number" non-telemarketing calls to wireless numbers."  (Young Decl. at Ex. A-5).  The ACA is a trade organization of credit and collection companies which provide a wide variety of accounts receivable management services.  DCI is a member of the ACA and joined in the ACA's petition.

On February 21, 2014, the FCC issued a public notice seeking comments on ACA's petition.  (Young Decl. at Ex. A-11).  The deadline for comments is March 24, 2014, and for reply comments, April 8, 2014.

### 4. PACE's Petition

On October 18, 2013, the Professional Association for Customer Engagement (PACE) filed a petition for Expedited Declaratory Rulemaking.  (Young Decl. at Ex. A-6).  The FCC issued a Public Notice on November 19, 2013, seeking comments on PACE's petition, which were due by December 19, 2013.  (Young Decl. at Ex. A-12).  The PACE petition asked for clarification on two issues related to the definition of ATDS for purposes of the TCPA: (1) whether a dialing system must have the capacity to dial numbers without human intervention; and (2) whether a dialing system's "capacity" is limited to what the system is capable of doing,

without further modification, at the time the call is placed.  *See* (Young Decl. at Ex. A-6).  While such issues may be relatively nuanced, the FCC's requests for comments indicates it is interested in providing businesses clarity as to what equipment, and what uses of such equipment, are subject to the TCPA.

### 5. Glide Talk's Petition

On October 28, 2013, Glide Talk, Ltd., filed a petition for declaratory ruling, *see* (Young Decl. at Ex. A-7), and the FCC requested comment on December 2, 2013, *see* (Young Decl. at Ex. A-13).  In its petition, Glide Talk asks the FCC to clarify that the definition of ATDS requires the subject equipment to have the present capacity to store or generate random or sequentially dialed numbers.  *See* (Young Decl. at Ex. 7).

### 6. Milton Fried's and Richard Evans's Petition

On May 27, 2014, petitioners Milton Fried and Richard Evans filed a Petition for Expedited Declaratory Ruling on Autodialer Issue, seeking an expedited declaratory ruling regarding whether certain equipment that is used to transmit text messages, either individually or combined, constitutes an autodialer within the meaning of the TCPA and the FCC's related rules.  *See* (Young Decl. at Ex. A-8).  On July 9, 2014, the FCC issued a public notice seeking comments on Fried's and Evans's petition.  *See* (Young Decl. at Ex. 14).  The deadline for comments is August 8, 2014, and for reply comments, August 25, 2014.

## IV.   ARGUMENT

Issues that may be outcome-determinative in this case are currently pending before the FCC for clarification and opinion.  As such, this Court, like other courts faced with this issue, should stay this action under the primary jurisdiction doctrine pending the FCC's determinations.  In the alternative, the Court should stay this action pursuant to the Court's inherent authority, as a stay furthers judicial economy and efficiency.

### A. The Court Should Stay This Action Pursuant to the Primary Jurisdiction Doctrine.

Issues of primary jurisdiction are before the Court in this case and require a stay. This Court has held the primary jurisdiction doctrine "has evolved as a means of reconciling the functions of administrative agencies with the judicial function of the courts." *Self v. BellSouth Mobility, Inc.*, 111 F. Supp. 2d 1169, 1172 (N.D. Ala. 2000) (quoting *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 532 F.2d 412, 416 (5th Cir. 1976)[5], cert. denied, 429 U.S. 1094, 97 S. Ct. 1109, 51 L. Ed. 2d 541 (1977)). The doctrine "comes into play whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. . . ." *Self*, 111 F. Supp. 2d at 1172 (quoting *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 63, 77 S. Ct. 161, 1 L. Ed. 2d 126 (1956)). *See also United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 353, 83 S. Ct. 1715, 10 L. Ed. 2d 915 (1963) (The doctrine applies when "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme."). Quoting the Supreme Court's opinion in *Western Pacific Railroad Co.*, the Court in *Self* reasoned:

> No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions. *See Texas & Pacific R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S. Ct. 350, 51 L. Ed. 553. More recently the expert and specialized knowledge of the agencies involved has been particularly stressed. *See Far East Conference v. United States*, 342 U.S. 570, 72 S. Ct. 492, 96 L. Ed. 576. The two factors are part of the same principle, "now firmly established, that in cases raising issues of fact not within the conventional experience of judges or

---

[5] All decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981, are binding precedent in this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

>cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure." *Id.*, 342 U.S. at 574–575, 72 S. Ct. at 494.

*Self*, 111 F. Supp. 2d at 1172 (quoting *Western Pacific Railroad Co.*, 352 U.S. at 64–65, 77 S. Ct. 161).

The Court in *Self* determined a court should refer a matter to an agency only where there is a "strong possibility that the agency decision would end the dispute" or at least serve as a "material aid in ultimately deciding" the issue before the court. 111 F. Supp. 2d at 1172 (quoting *Sprint Corp. v. Evans*, 846 F. Supp. 1497, 1505 (M.D. Ala. 1994) (in turn quoting *Carter v. AT&T*, 365 F.2d 486, 499 (5th Cir. 1966) and *Ricci v. Chicago Merc. Exch.*, 409 U.S. 289, 305, 93 S. Ct. 573, 582, 34 L. Ed. 2d 525 (1973)).

In determining whether to exercise its discretion, the court first must be satisfied that the particular agency has jurisdiction over the issue presented. *Self*, 111 F. Supp. 2d at 1173 (citing *Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 97 (2nd Cir. 1996)). If there is appropriate jurisdiction, the court must examine a number of factors, including the degree of the agency's discretion over the matter; the relative expertise of the agency and the courts in making the required determinations; the need for uniformity; the clarity of any preexisting agency pronouncements; and the status of any proceedings ongoing before the agency. 111 F. Supp. 2d at 1173 (citing *Mississippi Power Light*, 532 F.2d at 418–21; *National Comm. Ass'n v. AT&T*, 46 F.3d 220, 222 (2nd Cir. 1995). *Cf. United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987) ("There are four factors uniformly present

in cases where the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.")). Ultimately, "the court must always balance the benefits of seeking the agency's aid with the need to resolve disputes fairly yet as expeditiously as possible." 111 F. Supp. 2d at 1173 (quoting *Mississippi Power & Light*, 532 F.2d at 420).

This case satisfies these factors. First, the questions of what exactly constitutes an ATDS under the TCPA and whether debt-related calls (i.e., non-telemarketing calls) fall within the scope of the TCPA are questions of law that are presently before this Court and are pending before the FCC. The FCC's declaratory ruling(s) on the Petitions pending before it will, at a minimum, aid this Court's resolution of this matter. Receiving the FCC's guidance on potentially dispositive issues in this litigation will also be beneficial to the Court and the parties and may aid in uniformity of these determinations.

Second, per the TCPA, 47 U.S.C. § 227(b)(2), Congress has granted the FCC the power to implement the TCPA's requirements. Pursuant to that authority, the FCC has created a complex regulatory scheme that governs telemarketing. *See, e.g., In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 ¶¶ 132-33. The FCC has continually enacted rules and revisions thereto regarding the permissible scope of automated telephoning activity. *See* 47 C.F.R. § 64.1200 (rulemaking history). Thus, the FCC is in the best position to determine whether non-telemarketing activity falls within the scope of the TCPA and what constitutes an ATDS under the TCPA.

Furthermore, courts have determined that the primary jurisdiction doctrine should be applied where the FCC's actions may affect the outcome of a plaintiff's federal court litigation. *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1243 (10th Cir. 2007) (holding that where pending "FCC actions may affect the outcome of a plaintiff's federal court litigation, this court has previously assumed a stay is appropriate"); *see S. Cent. Bell Tel. Co. v. Louisiana Pub. Serv. Comm'n*, 744 F.2d 1107, 1118 (5th Cir. 1984), *cert. granted, judgment vacated on other grounds*, 476 U.S. 1166, 106 S. Ct. 2884, 90 L. Ed. 2d 972 (1986) (holding that "through the application of the doctrine of primary jurisdiction, the courts and the FCC should be able to prevent both significant inconsistent applications of FCC rules and serious judicial encroachment upon FCC responsibilities."); *Hurrle*, 2014 WL 670639, * 1.

In *Hurrle*, a case that is indistinguishable from the case at bar, the court stayed the case under the primary jurisdiction doctrine, stating:

> The complaint alleges that Real Time implements an autodialer to call debtors regarding unpaid debt. The law is unclear whether Congress intended the TCPA to prevent this activity. Telemarketing is one activity while collecting debt from known debtors seems to be a wholly separate activity. Whether the latter activity falls within the scope of the TCPA is currently being addressed by Congress and the FCC. The issue is clearly one of policy within those bodies, and guidance on the 'capacity' of autodialing systems would further clarify the law that [the plaintiff] seeks to enforce in this action.

*Id.* Likewise, in *Mendoza v. United Health Grp. Inc.*, 2014 WL 722031, (N.D. Cal., Jan. 6, 2014), another TCPA case in which one of the defendants contended that at the time of the alleged calls, "it did not utilize any capacity that its predictive dialer may have had to store or produce telephone numbers to be called using a random or sequential generator, and to dial such numbers," the court found that the prerequisites for application of the primary jurisdiction doctrine were satisfied. 2014 WL 722031, *2. *See also Couser v. Pre-Paid Legal Services, Inc.*, 2014 WL 197717, *6 (S.D. Cal. Jan. 16, 2014) ("[T]he Court would be inclined to stay this case

under the primary jurisdiction doctrine"); *Fried v. Sensia Salon, Inc.*, 2013 WL 6195483, *6 (S.D. Tex. 2013) (granting stay while FCC considers TCPA issues, pursuant to the primary jurisdiction doctrine); *Glauser v. Twillo, Inc.*, 2012 WL 259426, *3 (N.D. Cal. 2012) (same); *Passero v. Diversified Consultants, Inc.*, 2014 WL 2257185, *3 (W.D.N.Y. 2014) (same). As with those actions, the Court should likewise enter a stay here.

### B. The Court Should Stay This Action Pursuant to the Court's Inherent Authority.

A district court has broad discretion to stay proceedings as an incident to its power to control its own docket. *Green v. Roberts*, 2010 WL 5067442, *2 (S.D. Ala. 2010) (quoting *Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997); citing *Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000) ("A stay sometimes is authorized simply as a means of controlling the district court's docket and of managing cases before the district court."); *Dominguez v. Hartford Fin. Servs. Group, Inc.*, 530 F. Supp. 2d 902, 905 (S.D. Tex. 2008) ("The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation. . . ."); *Utah v. Eli Lilly and Co.*, 509 F. Supp. 2d 1016, 1019 (D. Utah 2007) (recognizing discretion to stay proceedings to save time and effort for parties and court)). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Green*, 2010 WL at *2 (quoting *Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S. Ct. 163, 81 L. Ed. 153 (1936)). Thus, in determining whether a stay is appropriate in a particular case, "the court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side." *Green*, 2010 WL at *2 (quoting *Feld Entm't, Inc. v.*

*A.S.P.C.A.*, 523 F. Supp. 2d 1, 3 (D.D.C. 2007)).  In exercising this discretion, district courts have considered such factors as: "(1) whether the litigation is at an early stage . . . ; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the court."  *Green*, 2010 WL at *2 (quoting *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010)).

Here, a stay is warranted in the interest of efficiency and judicial economy because if the FCC determines that non-telemarketing activity is not within the ambit of the TCPA, Plaintiff's TCPA claim cannot survive.  Likewise, if the FCC determines that dialers, like Diversified's, that do not have the current ability to generate and dial random or sequential numbers, are not ATDS's under the TCPA, Plaintiff's TCPA claim likewise cannot survive.  Absent a stay, Diversified will be forced to incur the ongoing burden and expense of defending a claim that may ultimately be impotent as a matter of law.  Given the likelihood of an FCC ruling in the near future (the FCC has specifically advised Members of Congress that a draft order to resolve these issues is under consideration by the FCC), Plaintiff cannot show he would suffer undue prejudice by a stay.

Further, on March 25, 2014, the FCC posted an article on its internet blog declaring "it is time to provide clarity" with respect to the TCPA.  *See* Article, attached as Exh. 15 to Young Decl., ¶ 2. In the article, FCC Commissioner Michael O'Rielly stated that the rules of the TCPA had become "complex and unclear," leading to an over-abundance of TCPA lawsuits and petitions to the FCC.  Mr. O'Reilly noted that court decisions may have unwittingly "enlarge[ed] the scope of potential violations" and created confusion as to the interpretation of the TCPA, and went on to say that it was "very troubling that legitimate companies feel they have to ask the

government for its blessing every time they need to make a business decision in order to avoid litigation." For these reasons, he declared, the FCC needed to "address this inventory of [pending] petitions *as soon as possible*." (emphasis added).

Thus, it is indisputable that the FCC is on the verge of making important and game-changing pronouncements as to the requirements of the TCPA and compliance therewith. It would greatly prejudice DCI if this action proceeded at a time when sweeping change is imminent. The only purported prejudice which Plaintiff may suffer as a result of a stay is a relatively short delay. In contrast, failing to stay this action would result in DCI's spending significant resources and money to defend itself against claims that the FCC could later determine have no merit. In addition, the litigation could result in an unjust and very substantial judgment being entered against DCI for allegedly violating a statute that is in the process of being clarified. There is, therefore, no question the instant matter should be stayed pending the FCC's important pronouncements as to the Petitions.

## V.   CONCLUSION

For the foregoing reasons, the Court should stay this case under the primary jurisdiction doctrine or alternatively pursuant to the Court's inherent authority until the FCC rules on the pending Petitions. In the event the Court denies Defendants' motion to stay, Defendants respectfully request that the dispositive motion deadline be extended for four weeks—from July 25, 2014 to August 25, 2014.

        Dated this 17th day of July, 2014.

        Respectfully submitted,

        /s/  L. Jackson Young, Jr.
        L. Jackson Young, Jr. (ASB-7946-G65L)
          *Attorney for Defendants*

**OF COUNSEL:**

Ferguson, Frost & Dodson, LLP
1400 Urban Center Drive, Suite 200
Birmingham, Alabama 35242
(205) 879.8722 (telephone)
(205) 879.8831 (telecopier)
ljy@ffdlaw.com (email)

## CERTIFICATE OF SERVICE

This is to certify that on this the 17th day of July, 2014, a copy of the foregoing document has been served upon counsel for all parties via CM/ECF as follows:

Brian L. Spellen, Esq.
The Trinity Law Group, LLC
1933 Richard Arrington, Jr. Boulevard South
Suite 223
Birmingham, Alabama 35209
brian@thetrinitylawgroup.com
*Attorney for Plaintiff*

Peter F. Barry, Esq.
Barry & Helwig, LLC
2701 University Avenue SE, Suite 209
Minneapolis, Minnesota 55414-3236
pbarry@lawpoint.com
*Attorney for Plaintiff*

/s/  L. Jackson Young, Jr.
Of Counsel